TARA K. MCGRATH
United States Attorney
Shital H. Thakkar
Assistant U.S. Attorney
Illinois Bar No. 6273151
United States Attorney's Office
880 Front Street, Room 6293
San Diego, CA 92101
(619) 546-8785
Shital.thakkar@usdoj.gov

Attorneys for the United States

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No. 23-cr-01436-RBM |
|---|---|
| Plaintiff, | |
| | Date: April 19, 2024 |
| v. | Time: 9:00 a.m. |
| | The Honorable Ruth Bermudez Montenegro |
| CARLOS MENDOZA, | **THE UNITED STATES' SENTENCING MEMORANDUM** |
| Defendant. | |

The Plaintiff, UNITED STATES OF AMERICA, by and through its counsel, TARA K. MCGRATH, United States Attorney, and Shital H. Thakkar, Assistant U.S. Attorney, hereby files its' Sentencing Memorandum.

I

**SUMMARY OF RECOMMENDATION AND ARGUMENTS**

Based on the Defendant's methamphetamine and ghost gun distribution activities, this Court should sentence him to the low-end of the guideline range, which is 87 months.

Considering the aggravating offense conduct and additional relevant conduct, the low-end would be sufficient, but not greater than necessary.

As to Defendant's sentencing guideline calculations, this memorandum addresses two areas that are in dispute between the probation department's recommendations, and the parties' recommendations (to the extent the parties disagree). As explained below, the parties agree that Defendant is Safety Valve eligible, and should be relieved of the mandatory minimum. However, the parties disagree about whether Defendant is disqualified from receiving a reduction in his base offense level for having zero criminal history points at the time of sentencing. As supported below, Defendant is not entitled to that reduction.

Finally, as discussed herein, taking into consideration all the factors under 18 U.S.C. § 3553(a), a sentence of 36 months (requested by Defendant), which is 51 months below the low-end of the guideline range, would be woefully inadequate. When compared to the offense conduct and relevant conduct, mitigating factors still do not justify a sentence below the low-end of the guideline range, which would be 87 months.

## II
## SAFETY VALVE AND USSG § 2D1.1(b)(1)

To qualify for safety valve under 18 U.S.C. § 3553(f), Defendant must meet the following criteria:

(1) Defendant cannot have more than 1 criminal history point;

(2) Defendant must not have used violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(3) Defendant's commission of the offense must not have resulted in death or serious bodily injury to any person;

(4) Defendant must not have been an organizer, leader, manager, or supervisor of others in the offense; and

(5) Defendant, not later than the time of the sentencing hearing, must have truthfully provided to the Government all information and evidence the

2

defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan.

The probation department, Defendant, and the United States all recommend that the Court apply USSG § 2D1.1(b)(1), which authorizes a two-level enhancement to a defendant's offense level if "a dangerous weapon (including a firearm) was possessed." However, the probation department opined that "because the defendant possessed a firearm in connection with the offense, he no longer is safety valve eligible [citing, in part, USSG § 5C1.2(a)(2)].

The United States disagrees and joins Defendant in recommending safety valve. Although they share somewhat similar language, sections 2D1.1(b)(1) and 5C1.2(a)(2) have different burdens of proof. To avoid the enhancement under section 2D1.1(b)(1), the defendant must prove it is "clearly improbable" he possessed a firearm in connection with the offense. *See USSG 2D1.1(b)(1), cmt. 11(A)* ("The enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense."). "But to invoke the 'safety valve' in § 2D1.1(b)(18), the defendant has a lower burden" than under 2D1.1(b)(1). *United States v. Alaniz*, 69 F.4th 1124, 1127 (9th Cir. 2023) The defendant need only show by a preponderance of the evidence that he did not possess a firearm in connection with the offense. *See United States v. Ferryman,* 444 F.3d 1183, 1186 (9th Cir. 2006); *United States v. Nelson*, 222 F.3d 545, 550 (9th Cir. 2000).

Therefore, the standard for thwarting the weapon-possession enhancement is generally higher for a criminal defendant. In other words, it is possible to possess a firearm for purposes of the enhancement under USSG § 2D1.1(b)(1) but not "in connection with" a drug offense for purposes of safety valve relief. *See Nelson*, 222 F.3d at 551; *United States v. Zavalza-Rodriguez*, 379 F.3d 1182,1188 (10th Cir. 2004) ("The scope of activity covered by § 2D1.1 is broader than the scope of activity covered by § 5C1.2.").

In this case, defendant sold methamphetamine to the agents twice, on two separate occasions with no firearms used, visible, or sold during those transactions. *See* ECF No. 44 at 3-4, pars. 4-8 (Defendant's Presentence Report, the "PSR"). The agents then asked

3

about firearms, which led to Defendant's future sales of ghost guns to the agents. *Id.* at 4-5, pars. 9-16. The subsequent sales of ghost guns did not involve sales of more methamphetamine. Although Defendant sold methamphetamine and ghost guns to the same agents, that alone is insufficient to show that the guns were used "in connection with" a drug offense for purposes of safety valve relief. *See e.g.*, *United States v. Tanner*, 389 F. Supp. 3d 684, 687 (N.D. Cal. 2019).

### III

### USSG § 4C1.1. ADJUSTMENT FOR CERTAIN ZERO-POINT OFFENDERS

In Part B, Subpart 1 to Amendment 821 to the Sentencing Guidelines, the Sentencing Commission added what now appears in Section 4C1.1, providing a 2-offense-level reduction for many offenders who present zero criminal history points. As supported below, Defendant is ineligible for that reduction.

The new provision states:

§ 4C1.1. Adjustment for Certain Zero-Point Offenders

(a) ADJUSTMENT.—If the defendant meets all of the following criteria:

    (1) the defendant did not receive any criminal history points from Chapter Four, Part A;

    (2) the defendant did not receive an adjustment under §3A1.4 (Terrorism);

    (3) the defendant did not use violence or credible threats of violence in connection with the offense;

    (4) the offense did not result in death or serious bodily injury;

    (5) the instant offense of conviction is not a sex offense;

    (6) the defendant did not personally cause substantial financial hardship;

    (7) the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other

                dangerous weapon (or induce another participant to do so) in connection with the offense;

    (8)    the instant offense of conviction is not covered by §2H1.1 (Offenses Involving Individual Rights);

    (9)    the defendant did not receive an adjustment under §3A1.1 (Hate Crime Motivation or Vulnerable Victim) or §3A1.5 (Serious Human Rights Offense); and

    (10)    the defendant did not receive an adjustment under §3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848;

decrease the offense level determined under Chapters Two and Three by 2 levels.

The Commission noted that these criteria identify circumstances in which zero-point defendants "are appropriately excluded from eligibility" for the reduction based on the seriousness of the offense or aggravating factors involved in the instant offense. *U.S. Sent'g Comm'n*, *Amendments to the Sentencing Guidelines* (April 27, 2023) at 79-80. As the Commission noted, the criteria are "informed by existing legislation, including the congressionally established criteria for the statutory safety valve at 18 U.S.C. § 3553(f) and the recent firearms legislation set forth in the Bipartisan Safer Communities Act." *Id.* at 80.

Defendant cannot meet the seventh criterion above, §4C1.1(a)(7), because of his actions in procuring, and then selling 8 ghost guns to the agents. It is true that this criterion is taken from the second part of the safety-valve provision in § 3553(f)(2) and §5C1.2(a)(2). However, building upon the language of the safety valve, this criterion addresses not only a defendant's *possession* of weapons, but also the conduct to "receive, purchase, transport, transfer, sell, or otherwise dispose of" firearms and other weapons. In other words, this criterion disqualifies *additional* conduct beyond possession.

When applied to Defendant in the instant case, it disqualifies from receiving the two-level reduction under §4C1.1, even though he should still receive the safety-valve benefit.

5

Indeed, Defendant did "receive, . . . transport, transfer, sell, or otherwise dispose of" firearms—8 ghost guns, to be exact. This Court should not grant him a two-level reduction under §4C1.1.

## IV
## **DEFENDANT'S OVERALL SENTENCE**

It is well-established that the Guidelines are advisory rather than mandatory. *See United States v. Booker*, 543 U.S. 220, 245 (2005); *Gall v. United States*, 128 S.Ct. 586 (2007). Nonetheless, the Supreme Court has held that "[t]he district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing" in accordance with the factors set forth in 18 U.S.C. § 3553(a). Booker, 543 U.S. at 264. Once the advisory Guidelines have been determined, the Court will look to the sentencing factors in § 3553(a) to determine an appropriate sentence for the defendant before the Court.

The United States has filed its recommended guideline calculations through its Sentencing Summary Chart, and highlighted portions of the calculations above. *See* ECF No. 48. The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the kinds of sentences and the sentencing range established by the Sentencing Guidelines; (5) pertinent policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentencing disparities among defendants who have similar criminal records and have been found guilty of similar conduct; and (7) the need to provide restitution to victims. 18 U.S.C. § 3553(a).

### A.   Nature and Circumstances of the Offense

Here, the nature and circumstances of the offense are extremely aggravating. Methamphetamine is a particularly addictive and destructive drug, and Defendant, as a purveyor of it, bears some responsibility for the dismal tide of ill effects that it causes in our community and in our country.

"The dangers of 'ghost guns' — guns that are assembled from parts, that are unregistered, and that are therefore untraceable — are without doubt real and substantial." *California v. Batfe*, 2024 U.S. Dist. LEXIS 32624, *4 (N.D. Cal. 2024). Ghost guns are purposely designed to avoid detection by law enforcement. *United States v. McCann*, 2023 U.S. Dist. LEXIS 62505, *8 (E.D. N.Y. 2023). Here, Defendant sold 8 ghost guns to undercover agents. ECF No. 5 at 4-5, pars. 9-16. One of the agents even told Defendant that the firearms were bound for Mexico, which did not deter Defendant. *Id.* at 4, par. 9.

### B. History and Characteristics of Defendant

Although Defendant is in criminal history category I, his history and characteristics show that there is more to consider. Defendant recently pleaded guilty to pending state charges where he was found driving with concealed and loaded ghost gun in his vehicle. *Id.* at 9, pars. 51-54. Post-arrest, he initially lied, denying that the gun was his. *Id.* at 9, par. 52.

### C. Need for the Sentence Imposed

The sentence imposed in this case must reflect the seriousness of the offense conduct and provide specific deterrence to Defendant from committing further crimes, as well as a general deterrence to prevent others from engaging in similar offenses. Most importantly, the sentence imposed must take into consideration the need to protect the public. As such, to generally deter others from committing similar crimes and to demonstrate the need to protect the public, a low-end sentence on this case should be sufficient to meet these goals.

### D. Need to Avoid Unwarranted Sentencing Disparities

Section 3553(a)(6) further directs courts to consider "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." Here, a low-end sentence on this case avoids any unwarranted sentencing disparities.

//
//
//

# V
# CONCLUSION

All the factors above clearly show that Defendant's recommended sentence of 36 months (51 months below the low-end of the guideline range), would be inadequate, and would not serve the ends of justice. Based on the extremely aggravating offense conduct and relevant conduct, Defendant should be sentenced to the low-end of the guideline range, which is 87 months.

DATED: April 17, 2024

Respectfully submitted,

TARA K. MCGRATH
United States Attorney

*/s/ Shital H. Thakkar*
Assistant United States Attorney